1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ELIZABETH MCCLELLAND,

11            Plaintiff,                    2:11-cv-1224-LKK-EFB PS

12      vs.

13   PERMANENTE MEDICAL GROUP, INC.,
     and DOES 1 through 10,
14
              Defendants.              FINDINGS AND RECOMMENDATIONS
15   _____/

16        This case, in which plaintiff is proceeding *pro se*, is before the undersigned pursuant to

17   Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1). Defendant The

18   Permanente Medical Group, Inc. ("TPMG") moves for summary judgment, or in the alternative,

19   partial summary judgment. Def.'s Mot. for Summ. J., Dckt. No. 18.[1] For the reasons stated

20   herein, it is recommended that TPMG's motion for summary judgment be granted.

21   I.      BACKGROUND

22        Plaintiff initiated this action on April 8, 2011 in the California Superior Court for the

23   County of Sacramento alleging that TPMG terminated her on the basis of her disability in

24   violation of state and federal law. Compl., Dckt. No. 1 at 7-62. She alleges eight causes of

25   _____

26        [1] For ease of reference, all citations to page numbers reference the page numbers assigned
     by the court's case management and electronic case file (CM/ECF) system.

                                                1

1  action: (1) termination, discipline, or demotion in violation of public policy; (2) breach of

2  contract[2]; (3) breach of the implied covenant of good faith and fair dealing; (4) disability

3  discrimination in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code

4  § 12940(a); (5) harassment and failure to prevent harassment in violation of FEHA, Cal. Gov't

5  Code § 12940(j), (k); (6) failure to accommodate in violation of FEHA, Cal. Gov't Code

6  § 12940(m); (7) failure to accommodate in violation of the Americans with Disabilities Act

7  ("ADA"), 42 U.S.C. § 12112; and (8) intentional infliction of severe emotional distress.  *Id*.

8  TPMG answered the complaint in April 2011, denying all liability and asserting various

9  affirmative defenses.  Answer, Dckt. No. 1 at 65-72.  TPMG removed the action to this court on

10  May 5, 2011 based on federal question jurisdiction.  Not. of Removal, Dckt. No. 1.

11        On June 15, 2012, TPMG filed a motion for summary judgment, or in the alternative, a

12  motion for partial summary judgment, with a statement of undisputed facts.  Def.'s Mot. for

13  Summ. J., Dckt. No. 18.  On July 5, 2012, plaintiff filed a response to TPMG's motion and to

14  TPMG's statement of undisputed facts.  Pl.'s Resp., Dckt. No. 20.  On July 10, 2012, TPMG

15  filed a reply to both, as well as objections to evidence plaintiff submitted in opposition to

16  TPMG's motion.  Def.'s Reply, Dckt. No. 21.  Plaintiff then filed a revised opposition and a

17  revised response to TPMG's statement of undisputed facts on August 15, 2012.[3]  Pl.'s Rev.

18  Opp'n, Dckt. No. 23; Pl.'s Rev. Resp. to Def.'s Stmt. of Undisp. Facts, Dckt. No. 24.  On August

19  22, 2012, TPMG filed a reply to plaintiff's revised opposition, a reply to plaintiff's revised

20

21        [2] Although plaintiff's second cause of action is entitled "Employment Discrimination," her
claim centers on the allegation that TPMG breached her employment contract. Dckt. No. 1 at 28-30;
22  Def.'s Ps & As, Dckt. No. 18-1 at 15 n. 6.

23        [3] Plaintiff's original handwritten response to TPMG's statement of undisputed facts was
difficult for the court to discern and did not clearly state whether each fact was disputed or
24  undisputed, as required by Local Rule 260(b).  E.D. Cal. L.R. 260(b).  Additionally, although
plaintiff cited to numerous documents throughout her opposition to TPMG's motion, she did not file
25  a copy of those documents or cite them as exhibits, as required by Local Rule 260(b).  *Id.*  On July
10, 2012, the court therefore ordered plaintiff to file a revised response to TPMG's statement of
26  undisputed facts and a revised opposition to TPMG's motion.  Order, Dckt. No. 22.

1  response, and objections to evidence plaintiff submitted in support of her revised opposition.

2  Def.'s Ps & As in Reply to Pl.'s Rev. Opp'n, Dckt. No. 26; Def.'s Reply to Pl.'s Rev. Resp. to

3  Def.'s Stmt. of Undisp. Facts, Dckt. No. 26-1.

4  II.   RELEVANT FACTS

5        A.   Background About Plaintiff[4]

6        Plaintiff is a registered nurse and during all relevant times was a union member of the

7  California Nurses Association ("CNA").  Compl. ¶ 6; Beardsley Decl., Dckt. No. 18-13, Ex.

8  BBB at ¶ 2.  In 1989, plaintiff accepted a position with TPMG.  Compl. ¶ 5.  Plaintiff suffers

9  from Familiar Spastic Paraparesis, a neurological condition.  *Id.* ¶ 7.  She asserts that as a result

10 of her condition she uses a cane for assistance with walking and she suffers from stress, anxiety

11 and depression which "have devastating substantial limitations in several of the Plaintiff's major

12 life activities" including her "ability to work her scheduled shifts [with a] regular and reliable

13 level of attendance."[5]  *Id.*

14       B.   Plaintiff's Employment as a TPMG Call and Advice Nurse

15       From 2004 to 2009, plaintiff was employed as a Call and Advice Nurse ("Advice Nurse")

16 at TPMG's Sacramento Appointment and Advice Call Center ("Call Center").  Compl. ¶ 6.  An

17 Advice Nurse responds to phone calls from patients in need of medical assistance.  Dckt. No. 18-

18 1 at 8; McInnis Decl., Dckt. No. 18-13, Ex. YY at ¶ 4; *see generally* Compl.  Physical attendance

19 at the Call Center is required to intercept these calls.[6]  Ex. YY at ¶¶ 1-2, 4; Gaston Decl., Dckt.

20

21       [4] Significant portions of this statement of facts are taken directly from the statement of facts
22 in TPMG's points and authorities and separate statement of undisputed facts, which unless otherwise
   indicated, plaintiff has not disputed.  Def.'s Stmt. of Undisp. Facts, Dckt. No. 18-2; Dckt. No. 24;
23 Dckt. No. 26-1.

24       [5] For purposes of this motion only, TPMG does not dispute plaintiff suffers from a "mental
   disability."  Dckt. No. 18-1 at 7 n.2.

25       [6] Plaintiff disputes that physical attendance is required.  Dckt. No. 24 at 7, 10.  However, the
26 evidence she cites fails to establish a genuine dispute.  It simply demonstrates that she was to be
   accorded additional days off of work to accommodate her disability.  *Id.*  Regardless of plaintiff's

No. 18-13, Ex. WW at ¶¶ 1-2, 4; Webb Decl., Dckt. No. 18-13, Ex. ZZ at ¶¶ 1-3.  It is therefore

essential that an Advice Nurse have regular and reliable attendance because under-staffing at the

Call Center compromises patient care.  Ex. WW at ¶¶ 1-2, 4; Ex. YY at ¶¶ 1-2, 4; Ex. ZZ at

¶¶ 1-3; Internal Job Post., Dckt. No. 18-10, Ex. LL; Groth Decl., Dckt. No. 18- 13, Ex. AAA at

¶¶ 1-5.  The job posting that plaintiff applied to expressly listed "excellent attendance record" as

a required qualification for an advice call nurse.[7]  Ex. LL ("Must have excellent attendance

record."); Ex. AAA.

C.       Plaintiff's Absences and Defendant's Accommodation

During her employment as an Advice Nurse, to accommodate plaintiff's disability,

TPMG provided plaintiff leaves of absence, though plaintiff did not request intermittent time off

from work until November 2007.[8]  Dckt. No. 24 at 10; Leave of Abs. Forms, Dckt. No. 18-4, Ex.

D; Absentee Cal., Dckt. No. 18-6, Ex. H; Leave of Abs. Req., Dckt. No. 18-6, Ex. N; Leave of

Abs. Exten., Dckt. No. 18-6, Ex. O; Let. re Unauth. Leave of Abs., Dckt. No. 18-7, Ex. S; Add'l

Let. re Unauth. Leave of Abs., Dckt. No. 18-9, Ex. DD; Month. Avail., Dckt. No. 18-9, Ex. EE;

Add'l Visit Verif., Dckt. No. 18-9, Ex. FF; Ex. WW at ¶¶ 1-2, 9, 12-13, 21, 23-25, 27, 36, 38,

---

concession that TPMG accommodated her in this respect, plaintiff's evidence does not refute TPMG's evidence that an Advice Nurse's physical attendance was required at the Call Center to intercept patient calls.

[7] Plaintiff disputes this fact but the evidence she cites does not repudiate TPMG's evidence or place this fact in genuine dispute.  *See* Dckt. No. 24 at 6-7, 9-10.  TPMG's evidence establishes that this position's posting in 2006 required an "excellent attendance record." Ex. LL; Ex. AAA. While plaintiff's evidence demonstrates that at some unidentified date, attendance was not listed as an essential function of this position, this does not show that attendance was not listed as a qualification when plaintiff applied in 2004.  *See* Dckt. No. 24 at 6-7, 9-10, 30.  Rather, the evidence is that it was listed as a required qualification in 2004.

[8] Plaintiff does not dispute that TPMG provided her leaves of absence. Dckt. No. 24 at 10-11.  She does dispute TPMG's assertion that she did not request an accommodation of intermittent time off from work for her chronic absenteeism until November of 2007.  *Id.* at 11.  In doing so, plaintiff only provides evidence that demonstrates she planned to participate in an emotion regulation group offered by TPMG's psychiatry department prior to November 2007. *Id.*; *see* Dckt. No. 24, Ex. O.  Although TPMG objects to this exhibit's admissibility, even assuming the admissibility of this exhibit, it does not concern plaintiff's request for time off from work and thus does not demonstrate that this fact is in dispute.  Dckt. No. 26-2 at 2.

4

1   39, 42; Ozenberger Decl., Dckt. No. 18-13, Ex. CCC; Time Records, Dckt. No. 18-14, Ex. DDD;

2   Req. for Docum., Dckt. No. 18-7, Ex. V; Dr. Lewis's Nt., Dckt. No. 18-8, Ex. W; Visit Verif.,

3   Dckt. No. 18-8, Ex. X; Add'l Visit Verif., Dckt. No. 18-8, Ex. Y; Lt. To Pl., Dckt. No. 18-8, Ex.

4   Z; Ex. WW at ¶¶ 1-2, 5, 17-19-26-30.

5          In 2007, plaintiff requested and TPMG granted her as an accommodation, a reduced shift

6   schedule from eight to four hours between September to November.  Dckt. No. 24 at 11; Pl.'s

7   Handwr. Nt., Dckt. No. 18-7, Ex. U; Dr. Doster's Nt., Dckt. No. 18-7, Ex. V; Ex. W; Ex. X; Ex.

8   Y; Ex. WW at ¶¶ 1-2, 26, 28-30; Ex. CCC; Ex. DDD.  In late 2007, plaintiff provided TPMG

9   with doctors' notes stating that she may require up to three days off per month to accommodate

10  her disability, and TPMG granted plaintiff this time off.  Dckt. No. 24 at 11; Exs. X; Y; WW at

11  ¶¶ 1-2, 29-30.  Plaintiff then requested and TPMG granted her an on-call position beginning in

12  March 2008 as a reasonable accommodation.  Dckt. No. 24 at 11; Pl.'s Handwr. Req., Dckt. No.

13  18-9, Ex. CC; Ex. EE; WW at ¶¶ 1-2, 35, 37-38.  In or about December 2008, plaintiff requested

14  and TPMG granted plaintiff a transfer from her on-call position to a thirty-two hour per week

15  position.  Dckt. No. 24 at 11; H.R. Adjstmt. Req., Dckt. No. 18-10, Ex. HH; Millikan Decl.,

16  Dckt. No. 18-13, Ex. XX at ¶ 12; Ex. CCC; Ex. DDD.

17         As of January 2009, plaintiff's physicians' most recent certification did not include an

18  accommodation for time off from work related to her disabilities.[9]  Dr. Paz's Certif., Dckt. No.

19  18-10, Ex. II; Ex. WW at ¶¶ 1-2, 33, 42; Ex. XX at ¶¶ 1, 3-5, 9, 12; *see* Dr. Doster's Certif.,

20  Dckt. No. 18-8, Ex. BB.  Even without supporting medical documentation, TPMG continued to

21  allow plaintiff up to three days off per month as an accommodation.  Dckt. No. 24 at 12; Ex. H;

22  Ex. BB; Ex. II; Lt. dated Jan. 27, 2009, Dckt. No. 18-10, Ex. JJ; Lt. dated Aug. 12, 2009, Dckt.

---

[9] Plaintiff disputes this fact and cites to evidence demonstrating that she required an accommodation of additional days off due to her disabilities.  Dckt. No. 24 at 11-12, Exs. E, F.  However, this evidence dates from before January 2009.  *Id.*, Exs. E, F.  Plaintiff provides no evidence that disputes this fact as of January 2009.  *See* Dckt. No. 24 at 11-12.  Plaintiff also does not dispute that after this time, TPMG continued to accommodate her with up to three days off per month without supporting medical documentation.  *Id.* at 12.

No. 18-11, Ex. OO; Ex. WW at ¶¶ 1-2, 33, 42-45; Ex. XX at ¶¶ 1, 3-5, 9, 12; Ex. YY at ¶¶ 1-2, 10; Ex. CCC; Ex. DDD.  In April 2009, TPMG granted plaintiff a change in manager after she submitted a doctor's note dated April 16, 2009.[10]  Ex. KK; Ex. WW at ¶¶ 1-2, 51-52; Ex. XX at ¶¶ 5, 15-16.  In May 2009, an examining psychiatrist concluded plaintiff was able to return to work with no restrictions.  Dckt. No. 24 at 12; Nasatir Report, Dckt. No. 18-11, Ex. QQ; Ex. XX at ¶¶ 5, 16-17.

Between June and August of 2009, plaintiff worked only ten of fifty-two scheduled shifts.  Dckt. No. 24 at 12; Ex. H; Ex. WW at ¶¶ 1, 12-13, 45; Ex. CCC; Ex. DDD.  During this time, TPMG cautioned plaintiff about her excessive absenteeism and asked her to provide further documentation from her medical providers, which she failed to do.[11]  Compl. ¶¶ 185-92; Lt. dated Aug. 4, 2009, Dckt. No. 18-10, Ex. MM; Mem. dated Aug. 12, 2009, Dckt. No. 18-10, Ex. NN; Ex. OO; Lt. dated June 23, 2009, Dckt. No. 18-12, Ex. TT; Lt. dated Jul. 21, 2009, Dckt. No. 18-12, Ex. UU; Ex. XX at ¶¶ 5, 18, 19-20; Ex. YY at ¶¶ 1-2, 8-10.  Between January 1, 2008

////

////

---

[10] Although plaintiff disputes this fact, she cites to evidence that fully supports the defendant's factual assertion.  Dckt. No. 24 at 12.  Plaintiff cites the same doctor's note TPMG cites (though TPMG objects to the admissibility of plaintiff's exhibit), which demonstrates that plaintiff's doctor sent TPMG a letter dated April 16, 2009 supporting her request for a new manager.  *Id.*, Ex. T; Dr. Paz's Nt., Dckt. No. 18-10, Ex. KK; Def.'s Obj. To Pl.'s Evid. Subm. in Opp'n, Dckt. No. 26-2 at 2.  Although TPMG objects to one of the two exhibits plaintiff additionally cites, even assuming the admissibility of both exhibits they support--not undermine--this fact and fail to establish a genuine dispute.  Dckt. No. 26-2 at 2; *see* Dckt. No. 24, Exs. N, U.

[11] Although plaintiff disputes this fact, she offers no evidence countering TPMG's evidence or demonstrating that this did not in fact occur from June 2009 to August 2009.  Dckt. No. 24 at 12.  Plaintiff does contend that she did not receive a copy of a letter purportedly mailed to plaintiff on August 12, 2009, and asserts that defendant re-wrote that letter for purposes of this litigation.  Dckt. Nos. 25, 27.  As a result, plaintiff seeks sanctions.  *Id.*  Plaintiff has not provided sufficient evidence in support of sanctions or demonstrating that defendant tampered with the evidence in this case.  Furthermore, even assuming the truth of plaintiff's assertion that she did not receive the purported August 12, 2009 letter, it is still undisputed that between June and August 2009, TPMG cautioned plaintiff about her excessive absenteeism and asked her to provide further documentation from her medical providers, which she failed to do.

1   and September 22, 2009, at no time was plaintiff disciplined or demoted.[12]  Ex. WW at ¶¶ 1-2,

2   25.  On September 11, 2009, TPMG terminated plaintiff.  Compl. ¶¶ 6, 81; Termin. Lt., Dckt.

3   No. 18-11, Ex. RR.

4           D.      Plaintiff's Interaction with TPMG Manager Treena Dear

5           During plaintiff's employment as an Advice Nurse with TPMG, Treena Dear was her

6   manager from late in 2005 until April 2009.  Compl. ¶¶ 9, 54; Ex. WW at ¶¶ 1-2, 6-7, 52.

7   According to plaintiff, during this time Ms. Dear tapped/pounded on plaintiff's table and

8   computer monitor and made loud, startling noises to get plaintiff's attention while plaintiff was

9   on the phone with patients.  Compl. ¶¶ 171-73, 251, 253; Dckt. No. 18-1 at 19; Dckt. No. 18-2 at

10  6-7, 11; Ex. WW at ¶¶ 1-2, 47; Ex. XX at ¶¶ 16-17.  Plaintiff found this conduct "distracting"

11  and "disrespectful."  Ex. XX at ¶ 16.  In 2009, Ms. Dear told plaintiff she should get a

12  wheelchair because she could burn to death if there was a building fire.[13]  Compl. ¶¶ 183, 254;

13  Dckt. No. 18-1 at 14; Ex. WW at ¶¶ 1-2, 49; Ex. XX at ¶ 16.[14]

14  _____

15      [12] Plaintiff disputes this fact, but notes that she provides no documentation to counter
    TPMG's evidence.  Dckt. No. 24 at 4.  Plaintiff's complaint does allege that on July 21, 2009, "SR
16  RN Manager" John McInnis and "SPHR Disability Consultant" Jennifer Heintz forced plaintiff to
    verbally agree to give up her ADA/FEHA rights in exchange for continued employment.  Compl.
17  ¶ 184.  However, plaintiff's complaint is not verified and plaintiff provides no evidence in support
    of that allegation.

18

19      [13] The motivation behind Ms. Dear's comment is disputed.  Dckt. No. 24 at 13.  Plaintiff
    argues that Ms. Dear intended to harass plaintiff and inflict severe emotional distress.  Compl.
20  ¶¶ 183, 254.  TPMG argues that Ms. Dear was concerned about plaintiff's safety as plaintiff walked
    slowly with a cane and Ms. Dear "had just attended a two-day long seminar on safety, which
    included fire safety."  Dckt. No. 18-1 at 14; see Ex. WW at ¶¶ 1-2, 48-49.

21

22      [14] Plaintiff's complaint also alleges that, despite plaintiff's requests, Ms. Dear refused to tell
    plaintiff about the times mandatory meetings were scheduled to start, even though Ms. Dear knew
23  that plaintiff required additional time to walk to the meetings due to her disability, and would then
    ridicule plaintiff for being the last to arrive at the meetings.  Compl. ¶¶ 169-71, 256.  Plaintiff also
24  alleges that when plaintiff's doctor requested that plaintiff be given a short walking break each hour,
    Ms. Dear scheduled the walking breaks to occur at times when plaintiff could be closely monitored,
25  and that Ms. Dear "would obsessively monitor" plaintiff's personal time causing plaintiff not to eat
    or drink on the days she was working.  Id. ¶¶ 175-78, 255.  Plaintiff contends that, as a result of that
    monitoring, plaintiff had to get a medical accommodation from her doctor stating that she may need
26  longer bathroom breaks.  Id. ¶ 179.  Plaintiff further alleges that Ms. Dear "would walk off from

E.     Plaintiff's CNA Grievance Against Defendant

Between 2004 to 2009, plaintiff was a CNA member and the terms and conditions of her employment with TPMG were governed by the applicable Collective Bargaining Agreement ("CBA") between TPMG and CNA.  Dckt. No. 18-2 at 3; Ex. BBB at 26-27; Dckt. No. 24 at 5. The CBA's grievance and arbitration procedure is "the sole and exclusive remedy for any and all disputes or rights arising from or relating to the Agreement," under which CNA "has the sole and exclusive right to file, pursue, withdraw or resolve grievances at any step of the procedure." Dckt. No. 18-2 at 3; CBA, Dckt. No. 18-12, Ex. VV at 16-17, 22; Dckt. No. 18-13 at 2-3; Dckt. No. 24 at 5.

Following plaintiff's termination in September 2009, CNA pursued a grievance on plaintiff's behalf through step three of the CBA's four-step grievance procedure.  Ex. BBB at 26-27; *see generally* Compl. (referencing various steps of the process); Dckt. No. 24 at 15; Ex. VV at 16-18.  In its exclusive capacity, CNA decided to not pursue plaintiff's grievance to step four, arbitration. Ex. BBB at 27; Ex. VV at 16-18.  Accordingly, plaintiff's grievance was not exhausted under the CBA's grievance procedure.[15]  *See* Ex. BBB at 27; *see* Ex. VV at 16-18.

_____

Plaintiff due to Plaintiff's inability to keep up with [her] leaving Plaintiff standing humiliated in front of her fellow nursing peers . . . ." *Id.* ¶ 180. According to the complaint, Ms. Dear also refused to answer plaintiff's questions about changes in work place policy. *Id.* ¶¶ 181-82, 257. However, as noted above, plaintiff's complaint is not verified and plaintiff provides no admissible evidence in support of those allegations.

[15] Plaintiff disputes this fact. Dckt. No. 23 at 15; Dckt. No. 24 at 5. TPMG offers the relevant CBA provisions and a declaration by Thomas Beardsley, TPMG's Senior Labor Relations Consultant who served as the hearing officer at the third step of plaintiff's grievance process, as evidence. Dckt. No. 18-1 at 16; Dckt. No. 18-2 at 3; Ex. VV; Ex. BBB. Thomas Beardsley declares that "[i]n compliance with the grievance procedure set forth in the CBA, the union presented and pursued a grievance on behalf of [plaintiff] up through Step Three of the procedure." Ex. BBB at 27. After Mr. Beardsley denied plaintiff's grievance at step three, the "CNA did not pursue the grievance to Step Four." *Id.* The CBA provides that CNA, "as the exclusive bargaining representative of employees in the bargaining unit, has the sole and exclusive right to file, pursue, withdraw or resolve grievances at any step of the [four-step] procedure." Ex. VV at 16-18.
Plaintiff argues that the CBA grievance procedure was exhausted and cites to evidence as support. Dckt. No. 23 at 15; Dckt. No. 24 at 5. Though TPMG objects to admission of plaintiff's evidence, even assuming plaintiff's evidence as admissible, it fails to support her contention. The

1    F.    Plaintiff's Dual Administrative DFEH and EEOC Complaint

2    Plaintiff dually filed an administrative complaint regarding her termination with the

3 DFEH and the EEOC in December of 2009.[16]  Ex. A; Dckt. No. 24 at 9.  Plaintiff alleged

4 discrimination and harassment based on her physical disability of hereditary spastic

5 paraparesis.[17]  Ex. A at 8.  Plaintiff gave several reasons for these allegations, including her

6 supervisor's alleged verbal harassment concerning her disability, as well as her supervisor's

7 comments regarding her need for both a wheelchair and a doctor's note justifying her taking long

8 restroom breaks due to her condition.  *Id.*  FEHA's investigation found no statutory violation and

9 closed plaintiff's administrative case in December of 2010.  *Id.* at 3.  The EEOC adopted

10 FEHA's findings and closed its file on plaintiff's charge.  *Id.* at 2-3.

11  III.   MOTION FOR SUMMARY JUDGMENT

12    A.    Summary Judgment Standard

13    Summary judgment is appropriate when it is demonstrated that there exists "no genuine

14 issue as to any  material fact and that the moving party is entitled to a judgment as a matter of

15 law." Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

16  ////

17  _____

18 evidence she relies on is in accord with Mr. Beardsley's declarations that CNA decided not to pursue her grievance against TPMG further.  Dckt. No. 26-2 at 2; CNA Grievance Resp., Dckt. No. 24 at
19 5, Ex. G at 39; Ex. BBB at 27.  Plaintiff thus provides no evidence disputing TPMG's evidence or placing in genuine dispute the fact that the CBA procedure was not exhausted, but only pursued
20 through step three by CNA under its exclusive contractual power.

21    [16] As proof of this fact, TPMG attached to its motion plaintiff's dual charge. EEOC & DFEH Compl., Dckt. No. 18-4, Ex. A.  Plaintiff contends that this fact is in dispute and cites to her DFEH
22 complaint.  Dckt. No. 24 at 9.  Because the DFEH complaint along with the dual EEOC complaint demonstrates that plaintiff filed this complaint, this fact is not genuinely in dispute. *See* Fed. R. Civ.
23 P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.  Furthermore, plaintiff asserted in her complaint that she timely filed complaints with FEHA and the EEOC.  Compl. ¶ 119.

24

25    [17] Plaintiff disputes this fact and again cites to her DFEH complaint, which TPMG also cites as support.  Dckt. No. 24 at 9; Ex. A.  The complaint plainly shows plaintiff alleged that she was
26 discriminated against, "harassed and terminated due to my disability (hereditary spastic paraparesis)."  This fact is not genuinely in dispute, nor is the dispute raised by plaintiff material.

1    always bears the initial responsibility of informing the district
     court of the basis for its motion, and identifying those portions of
2    "the pleadings, depositions, answers to interrogatories, and
     admissions on file, together with the affidavits, if any," which it
3    believes demonstrate the absence of a genuine issue of material
     fact.
4

5    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

6        Summary judgment avoids unnecessary trials in cases with no genuinely disputed

7    material facts.  *See N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.

8    1994).  At issue is "whether the evidence presents a sufficient disagreement to require

9    submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

10   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, Rule 56 serves to screen

11   the latter cases from those which actually require resolution of genuine disputes over material

12   facts; e.g., issues that can only be determined through presentation of testimony at trial such as

13   the credibility of conflicting testimony over facts that make a difference in the outcome.

14   *Celotex*, 477 U.S. at 323.

15       Focus on where the burden of proof lies as to the issue in question is crucial to summary

16   judgment procedures.  "[W]here the nonmoving party will bear the burden of proof at trial on a

17   dispositive issue, a summary judgment motion may properly be made in reliance solely on the

18   'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.*  Indeed,

19   summary judgment should be entered, after adequate time for discovery and upon motion,

20   against a party who fails to make a showing sufficient to establish the existence of an element

21   essential to that party's case, and on which that party will bear the burden of proof at trial.  *See*

22   *id.* at 322.  In such a circumstance, summary judgment should be granted, "so long as whatever

23   is before the district court demonstrates that the standard for entry of summary judgment, as set

24   forth in Rule 56(c), is satisfied."  *Id.* at 323.

25       If the moving party meets its initial responsibility, the opposing party must establish that

26   a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v.*

1   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To overcome summary judgment, the opposing

2   party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the

3   claim under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac.*

4   *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is

5   such that a reasonable jury could return a verdict for the nonmoving party.  *See Wool v. Tandem*

6   *Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).  In this regard, "a complete failure of

7   proof concerning an essential element of the nonmoving party's case necessarily renders all

8   other facts immaterial."  *Celotex*, 477 U.S. at 323.   In attempting to establish the existence of a

9   factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of

10  its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

11  admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R.

12  Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.  It is sufficient that "the claimed factual dispute

13  be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

14  *T.W. Elec. Serv.*, 809 F.2d at 631.

15         Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the

16  proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587

17  (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  However, the

18  opposing party must demonstrate with adequate evidence a genuine issue for trial.

19  *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989).  The opposing party must do

20  so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence

21  presented."  *Anderson*, 477 U.S. at 248, 252.  If the evidence presented could not support a

22  judgment in the opposing party's favor, there is no genuine issue.  *Id.*; *Celotex*, 477 U.S. at 323.

23         In resolving a summary judgment motion, the court examines the pleadings, depositions,

24  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

25  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  *See Anderson*, 477 U.S. at

26  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

1   drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences

2   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

3   predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.

4   Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

5   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

6   some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

7   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

8   trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

9        B.      Defendant TPMG's Motion for Summary Judgment

10               1.  Breach of Contract and Covenant of Good Faith and Fair Dealing (Claims 2, 3)

11       TPMG moves for summary judgment on plaintiff's claims for breach of contract and

12   breach of the implied covenant of good faith and fair dealing (causes of action two and three),

13   arguing that the claims are barred as a matter of law because plaintiff did not exhaust the CBA's

14   grievance procedure.[18]  Dckt. No. 18-1 at 15-16.

15       An employee covered by a collective bargaining agreement is bound by its terms,

16   including those setting out the required method of enforcement of the contract's rights. *Vaca v.

17   Sipes*, 386 U.S. 171, 184 (1967).  Therefore, "[a]s a general rule, members of a collective

18   bargaining unit must first exhaust contractual grievance procedures before bringing an action for

19   breach of the collective bargaining agreement." *Carr v. Pac. Maritime Ass'n,* 904 F.2d 1313,

20   1317 (9th Cir. 1990); *Vaca*, 386 U.S. at 184 ("[I]t is settled that the employee must at least

21   attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining

22   agreement.").  For this reason, if a "wrongfully discharged employee himself resorts to the courts

23   before the grievance procedures have been fully exhausted, the employer may well defend on the

24

_____

25       [18] TPMG also argues that plaintiff's breach claims fail since plaintiff was terminated for
     legitimate reasons that do not violate the CBA.  Dckt. No. 18-1 at 16.  Because the claims were not
26   properly exhausted, that argument need not be addressed.

1  ground that the exclusive remedies provided by such a contract have not been exhausted." *Vaca*,

2  386 U.S. at 184.

3       There are exceptions and employees are not be limited to the contract's exclusive

4  grievance procedures if any of these exceptions apply. *Id.* at 185-88; *see Republic Steel Corp. v.*

5  *Maddox*, 379 U.S. 650, 652 (1965).  One such exception is if the employee is wrongfully

6  prevented from exhausting the grievance procedure by the union's breach of its duty of fair

7  representation.  *Vaca*, 386 U.S. at 185-86; *see Humphrey v. Moore*, 375 U.S. 335, 342 (1964);

8  *Beriault v. Local 40, Super Cargoes and Checkers of Intern. Longshoremen's and*

9  *Warehousemen*, 501 F.2d 258, 262-63 (9th Cir. 1974).  This exception, typically referred to as a

10  hybrid suit under section 301 of the Labor Management Relations Act and brought against both

11  the employer and the union, requires a showing that the union wrongfully refused, in its

12  exclusive contractual power, to invoke the grievance procedure's stages and thereby breached its

13  duty of fair representation.  *Vaca*, 386 U.S. at 185-86.  "A breach of the statutory duty of fair

14  representation occurs only when a union's conduct toward a member of the collective bargaining

15  unit is arbitrary, discriminatory, or in bad faith."  *Id.* at 190. The Supreme Court has made clear,

16  however, that the individual employee does not have "an absolute right to have his grievance

17  taken to arbitration regardless of the provisions of the applicable collective bargaining

18  agreement."  *Id.*  Rather, the union has considerable discretion in the manner and does not breach

19  its duty of fair representation merely because it settled a grievance short of arbitration or

20  concluded that a particular grievance lacked sufficient merit to justify taking it to the level of

21  arbitration.  *Id.* at 193-94.  Assuming such a breach by the union is established, the employee

22  must also establish that the employer breached the collective bargaining agreement.  *Id.*

23       TPMG argues that plaintiff cannot show that CNA breached its duty of fair

24  representation in handling her grievance.  Dckt. No. 18-1 at 16; *see* Ex. BBB at 26-27; *see* Ex.

25  VV at 16-18.  As noted above, following plaintiff's termination in September 2009, CNA

26  pursued a grievance on plaintiff's behalf through step three of the CBA's four-step grievance

procedure.  It decided, however, at step four, arbitration, to not pursue the grievance further.  Ex.
BBB at 27; Ex. VV at 16-18.  Plaintiff's grievance accordingly was not exhausted under the
CBA's procedure.  *Id.*  Plaintiff has not argued nor shown any facts that justify any exceptions
applicable to her case that would allow her to proceed despite her failure to exhaust.[19]  *See* Dckt.
Nos. 23, 24.  Pursuant to CNA's exclusive power under the CBA "to file, pursue, withdraw or
resolve grievances at any step of the procedure," CNA elected to not pursue plaintiff's grievance
after step three.  Ex. VV at 16-17; Ex. BBB at 27.  However, plaintiff does not contend nor
provide proof that CNA's decision was wrongful and constituted a breach of its duty of fair
representation.  *See Vaca*, 386 U.S. at 185-86; *see also Beriault*, 501 F.2d at 262-64, *see
generally* Dckt. Nos. 23, 24.  The fact that plaintiff's instant action is against TPMG, not CNA,
did not prevent plaintiff from responding to TPMG's invocation of the failure to exhaust
contractual remedies defense by alleging and offering proof that CNA breached its duty of fair
representation.  *Vaca*, 386 U.S. at 186-87.  In fact, evidence offered by plaintiff, if assumed
admissible as TPMG objects to its admissibility, tends to demonstrate that CNA did not act
arbitrarily or with bad faith, deceit, or dishonesty and thus did not act wrongly in breach of its
duty.  *See Beriault*, 501 F.2d at 263-64; *see also* Dckt. No. 24 at 5, Ex. G at 39; Dckt. No. 26-2 at
2.  Therefore, plaintiff's second and third causes of action alleging TPMG breached the CBA are
barred as a matter of law for failure to exhaust contractual remedies, and TPMG is entitled to
summary judgment on those claims.

////

////

---

[19] Plaintiff impliedly concedes one such exception is not present by conceding it is not in
dispute.  "If a grievance and arbitration procedure is included in the contract, but the parties do not
intend it to be an exclusive remedy, then a suit for breach of contract will normally be heard even
though such procedures have not been exhausted."  *Vaca*, 386 U.S. at 184 n.9.  Plaintiff does not
dispute the CBA's grievance and arbitration procedure's exclusivity.  Dckt. No. 24 at 5; *see* Ex. VV
at 16-17 ("The parties agree that the grievance/arbitration procedure is the sole and exclusive
remedy for any and all dispute or rights arising from or relating to the Agreement.").

2.   Disability Discrimination Under Cal. Gov't Code § 12940(a) (Claim 4)

TPMG moves for summary judgment on plaintiff's disability discrimination claim under FEHA, arguing that plaintiff cannot establish a prima facie case of disability discrimination since she is not a "qualified individual." Dckt. No. 18-1 at 17.  Specifically, TPMG argues that regular and reliable attendance and physical presence at the Call Center are essential functions of the position of Advice Nurse and that, even with reasonable accommodations, plaintiff was unable to perform the essential function of attending work regularly and reliably.  *Id.*  Additionally, TPMG contends that, even if plaintiff could establish a prima facie case for disability discrimination, TPMG is still entitled to summary judgment on that claim because TPMG had a legitimate, non-discriminatory reason for discharging plaintiff.  *Id.*

To establish a prima facie case for disparate treatment discrimination on the basis of a physical disability under California law, plaintiff must show: "(1) [s]he suffers from a disability, (2) [s]he is otherwise qualified to do [her] job, (3) [s]he suffered an adverse employment action, and (4) the employer harbored discriminatory intent." *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1246 (2008).  In addition, California has adopted the three-stage burden shifting test of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  Once plaintiff has made a prima facie showing, "the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action." *Deschene v. Pinole Point Steel Co.*, 76 Cal. App. 4th 33, 44 (1999).  If the employer offers such a reason, "plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated." *Id.*[20]

---

[20] *McDonnell Douglas* burden-shifting is inapplicable where a plaintiff offers direct, as opposed to circumstantial, evidence of discrimination. *See Trop v. Sony Pictures Entm't Inc.*, 129 Cal. App. 4th 1133, 1144 (2005).  However, plaintiff does not credibly contend that she offers "direct" evidence of discrimination here; that plaintiff was terminated on the basis of her disability is based on circumstantial evidence only.

1    TPMG also contends that any purported disability discrimination claim under Title I of

2    the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq*., would fail for the

3    same reasons.  Dckt. No. 18-1 at 16-17.  Plaintiff's complaint specifically alleges that her fourth

4    cause of action for disability discrimination is brought under FEHA only, but that her failure to

5    accommodate claims are brought under both FEHA (sixth claim) and the ADA (seventh claim).

6    Those claims are discussed below.  However, even if plaintiff's fourth claim was brought under

7    the ADA, TPMG would be entitled to summary judgment on that claim for the same reasons that

8    TPMG is entitled to summary judgment on the FEHA claim.  *See Kennedy v. Applause, Inc*., 90

9    F.3d 1477, 1480-82 (9th Cir. 1996).

10                    a.   Plaintiff's Prima Facie Case of Discrimination

11    TPMG contends that plaintiff is not a "qualified individual" under FEHA since regular

12    and reliable attendance and physical presence at the Call Center are essential functions of the

13    position of Advice Nurse and that, even with reasonable accommodations, plaintiff was unable to

14    perform the essential function of attending work regularly and reliably.  Dckt. No. 18-1 at 16-18.

15    The second part of the prima facie case for disability discrimination under FEHA requires

16    plaintiff to show that she "could perform the essential duties of the job with or without

17    reasonable accommodations."  *Sandell v. Taylor-Listug, Inc*., 188 Cal. App. 4th 297, 310 (2010);

18    *see also Green v. State*, 42 Cal. 4th 254, 258 (2007) (noting that "FEHA requires employees to

19    prove that they are qualified individuals under the statute just as the federal ADA requires").

20    This minimal showing may be met with circumstantial evidence and a plaintiff's self-assessment

21    of her performance.  *See Lyons v. England*, 307 F.3d 1092, 1115 (9th Cir. 2002) (finding prima

22    facie burden met where plaintiffs provided positive self performance assessments and

23    circumstantial evidence of qualification based on their prior positions with defendant-employer);

24    *Aragon v. Republic Silver State Disposal Inc*., 292 F.3d 654, 659-60 (9th Cir. 2002) (noting

25    prima facie case satisfied based on circumstantial evidence and plaintiff's asserted

26    self-assessment that "his performance was equal to his coworkers").

1    Here, even given that minimal burden, plaintiff has not shown that she could perform the

2    essential duties of her job with or without reasonable accommodations.  As noted above, there is

3    no genuine dispute regarding whether an Advice Nurse must have regular and reliable

4    attendance because under-staffing at the Call Center compromises patient care.  Nor has plaintiff

5    provided evidence demonstrating that she could meet those functions of the Advice Nurse

6    position even with reasonable accommodations.  Therefore, plaintiff has not established a prima

7    facie case of disability discrimination under FEHA.

8                    b.  Defendant's Nondiscriminatory Rationale/Plaintiff's Response

9    Even assuming a prima facie case of disability discrimination under the FEHA, TPMG

10   has offered a legitimate, nondiscriminatory reason for terminating plaintiff.  Specifically, TPMG

11   has offered evidence demonstrating that after three years of chronic absenteeism, plaintiff was

12   terminated for the inability to perform the essential job function of regularly and reliably

13   attending work even with an accommodation.  Dckt. No. 18-1 at 17-18.

14   Because TPMG has offered a plausible, nondiscriminatory rationale for plaintiff's

15   termination, the burden shifts to plaintiff to produce evidence of pretext.  "[T]he employee must

16   demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions

17   in the employer's proffered legitimate reasons for its action that a reasonable fact finder could

18   rationally find them unworthy of credence, and hence infer that the employer did not act for the

19   asserted nondiscriminatory reasons." *Sandell*, 188 Cal. App. 4th at 314 (citations and alterations

20   omitted).  Summary judgment may be appropriate where "given the strength of the employer's

21   showing of innocent reasons, any countervailing circumstantial evidence of discriminatory

22   motive, even if it may technically constitute a prima facie case, is too weak to raise a rational

23   inference that discrimination occurred." *Guz*, 24 Cal. 4th at 362.

24   Plaintiff has not offered any evidence demonstrating that TPMG's stated reason for

25   terminating plaintiff is either false or pretextual, or evidence that TPMG acted with

26   discriminatory animus, or evidence of each which would permit a reasonable trier of fact to

17

conclude TPMG intentionally discriminated against plaintiff on the basis of her disability.  The

only evidence she offers is her contention that while Ms. Dear was plaintiff's manager, Ms. Dear

tapped/pounded on plaintiff's table and computer monitor to get plaintiff's attention while

plaintiff was on the phone with patients, and that in 2009, Ms. Dear told plaintiff she should get

a wheelchair because she could burn to death if there was a building fire.  However, that

evidence does not create a genuine issue of material fact as to whether TPMG's stated reason for

terminating plaintiff was false or pretextual, whether TPMG acted with discriminatory animus,

or whether TPMG discriminated against plaintiff on the basis of her disability.[21]  The three years

of chronic absenteeism is well documented in the record.  The record also establishes without

serious dispute that reliable attendance and physical presence at the Call Center are essential

functions of the position of Advice Nurse.  Thus, even assuming plaintiff's account of Ms.

Dear's statement pertaining to a wheelchair in the event of a fire and taking it in the light most

favorable to plaintiff, neither establishes pretext nor negates the articulated reason for the

ultimate termination decision.  Therefore, TPMG is entitled to summary judgment on plaintiff's

fourth claim for disability discrimination under FEHA.

////

////

////

---

[21] Even if the court assumes that plaintiff's other allegations regarding Ms. Dear's conduct – that Ms. Dear refused to tell plaintiff about the times mandatory meetings were scheduled to start, obsessively monitored plaintiff's personal time, walked away from plaintiff, required plaintiff to get a doctor's note justifying longer bathroom breaks, and  refused to answer plaintiff's questions about changes in work place policy — were supported by admissible evidence, there still would not be any genuine issue of material fact as to whether TPMG's stated reason for terminating plaintiff was false or pretextual, whether TPMG acted with discriminatory animus, or whether TPMG discriminated against plaintiff on the basis of her disability.  There is no evidence that any of that conduct had any connection to plaintiff's disability or to her termination.  Nor do those allegations demonstrate weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in TPMG's proffered legitimate reasons for terminating plaintiff such that a reasonable fact finder could rationally find them unworthy of credence, and hence infer that TPMG did not act for the asserted nondiscriminatory reasons.

3.  <u>Hostile Work Environment/Harassment, Cal. Gov't Code § 12940(I) (Claim 5)</u>

Plaintiff's harassment claim under FEHA appears to be based on her contentions that while Ms. Dear was plaintiff's manager and engaged in several acts toward plaintiff that plaintiff considers harassing.  TPMG moves for summary judgment on the harassment claim, arguing that it did not engage in any severe or pervasive conduct towards plaintiff.  Dckt. No. 18-1 at 18-20.

"To prevail on a hostile work environment claim under California's FEHA, an employee must show that the harassing conduct was 'severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees . . . . '"  *Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009) (quoting *Miller v. Dep't of Corrections*, 36 Cal. 4th 446, 462 (2005)).  "[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.  Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job."  *Reno v. Baird*, 18 Cal. 4th 640, 646-47 (1998).

"The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that she was actually offended."  *Fisher*, 214 Cal. App. 3d at 609-10.  "Harassment cannot be occasional, isolated, sporadic, or trivial[;] rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature."  *Id*. at 610.

The Ninth Circuit uses "a totality of the circumstances test to determine whether a plaintiff's allegations make out a colorable claim of hostile work environment."  *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).  Factors considered include frequency, severity and level of interference with work performance and whether discriminatory conduct is physically threatening or humiliating or a mere offensive utterance.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *Brooks*, 229 F.3d at 924 (citing *Harris*, 510 U.S. at 23).

19

1    Here, plaintiff alleges in her FEHA complaint that while Ms. Dear was plaintiff's

2    manager, Ms. Dear tapped/pounded on plaintiff's table and computer monitor to get plaintiff's

3    attention while plaintiff was on the phone; that Ms. Dear required plaintiff to provide a doctor's

4    note justifying her taking long restroom breaks; and that Ms. Dear made the statement in 2009

5    that plaintiff should get a wheelchair to have in the event of a building fire.[22]   However, those

6    allegations do not create a genuine issue of material fact as to whether the alleged conduct

7    created a hostile work environment.

8         With regard to Ms. Dear's alleged tapping/pounding plaintiff's table and computer

9    monitor to get plaintiff's attention while plaintiff was on the phone with patients, plaintiff has

10   offered no evidence demonstrating that the conduct was based on or in any way connected to

11   plaintiff's disability.  Nor has she offered evidence demonstrating that the tapping/pounding on

12   her desk, which plaintiff deemed "distracting" and "disrespectful," was "severe enough or

13   sufficiently pervasive to alter the conditions of employment and create a work environment that

14   qualifies as hostile or abusive to employees."  *Hughes*, 46 Cal. 4th at 1043.  With regard to Ms.

15   Dear's alleged request for a note from plaintiff's doctor justifying her need for longer restroom

16   breaks, that conduct would not amount to harassment since it is "conduct of a type necessary for

17   management of the employer's business or performance of the supervisory employee's job."

18   *Reno*, 18 Cal. 4th at 646-47.  Finally, with regard to Ms. Dear's alleged statement in 2009 that

19   plaintiff should get a wheelchair because she could burn to death if there was a building fire, that

20   isolated comment is also not "severe enough or sufficiently pervasive to alter the conditions of

21

22         [22] As noted above, plaintiff also alleges in her complaint that Ms. Dear refused to tell plaintiff
     about the times mandatory meetings were scheduled to start, obsessively monitored plaintiff's
23   personal time, walked away from plaintiff, and refused to answer plaintiff's questions about changes
     in work place policy.  However, those allegations were not alleged in plaintiff's FEHA complaint
24   and are not supported by admissible evidence.  Moreover, even if they were, they would not create
     a genuine issue of material fact as to whether there was a hostile work environment since the alleged
25   conduct was not "severe enough or sufficiently pervasive to alter the conditions of employment and
     create a work environment that qualifies as hostile or abusive to employees."  *Hughes*, 46 Cal. 4th
26   at 1043.

1   employment and create a work environment that qualifies as hostile or abusive to employees."

2   *Hughes*, 46 Cal. 4th at 1043.  Even when reviewing all of the alleged conduct together,

3   considering the frequency, severity, and level of interference with work performance, as well as

4   whether the alleged discriminatory conduct is physically threatening or humiliating or a mere

5   offensive utterance, here there is no genuine issue of material of fact regarding whether plaintiff

6   was subjected to harassment or a hostile work environment.  Accordingly, TPMG is entitled to

7   summary judgment on this claim.

8              4.   Failure to Accommodate (Claims 6, 7)

9                    a.   Exhaustion

10          TPMG argues that plaintiff's failure to accommodate claims under the FEHA and the

11  ADA (causes of action six and seven) are barred as a matter of law because plaintiff did not

12  exhaust her administrative remedies.  Dckt. No. 18-1 at 20-21.

13          FEHA or ADA claims may not be pursued in federal court until administrative remedies

14  are exhausted.  42 U.S.C. § 12117(a) (cross-referencing 42 U.S.C. § 2000e-5(e)(1)); *Yurick v.*

15  *Superior Court*, 209 Cal. App. 3d 1116, 1121 (1989); *see Leong v. Potter*, 347 F.3d 1117, 1121-

16  22 (9th Cir. 2003).  The permissible scope of a plaintiff's federal court action under the FEHA or

17  the ADA is defined by the scope of the preceding administrative charge and investigation.

18  *Leong*, 347 F.3d at 1122; *Yurick,* 209 Cal. App. 3d at 1121.  Here, plaintiff filed a dual

19  administrative complaint with the DFEH and the EEOC alleging discrimination and harassment

20  due her physical disability of hereditary spastic paraparesis.  Ex. A.  Because plaintiff did not

21  specifically allege failure to accommodate in her administrative complaint, TPMG moves for

22  summary judgment on these claims for failure to exhaust.  *See id*; Dckt. No. 18-1 at 20-21.

23          A district court may only consider claims not alleged in the administrative complaint that

24  are "like or reasonably related to" the claims that were alleged.  *Leong*, 347 F.3d at 1122

25  (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)); *Yurick*, 209 Cal. App. 3d at

26  1121.  Even if the non-alleged claims were not part of the "actual" administrative investigation,

they can still be considered provided they "are within the scope" of an investigation "that

reasonably could be expected to grow out of the allegations." *Id.*; *Sosa,* 920 F.2d at 1456.  A

court must construe the administrative charges "with great liberality, especially when the

complainant is acting pro se . . . ." *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir.

2001); *Sosa*, 920 F.2d at 1456.  Administrative investigation of a claim could not be reasonably

expected to grow out of the allegations if it "involve[s] totally different kinds of allegedly

improper conduct" such as when 'the difference . . . is a matter of adding an entirely new basis

for the alleged discrimination." *Rodriguez*, 265 F.3d at 897 (quoting *Okoli v. Lockheed*

*Technical Operations Co.*, 36 Cal. App. 4th 1607, 1615 (1995)); *see Leong*, 347 F.3d at 1122

(finding a disability claim relying on a different theory and a different statute than the plaintiff's

administrative charges did not come within the scope of an investigation reasonably expected to

grow from the administrative complaint, especially as the complaint made no mention of

disability whatsoever).

       TPMG argues that plaintiff's discrimination and harassment allegations in her

administrative complaint "would not reasonably trigger an investigation into a claim of failure to

accommodate as the 'claims involve totally different kinds of allegedly improper conduct,'" and

plaintiff did not indicate that she was denied accommodation.  Dckt. No. 18-1 at 21.

Nonetheless, plaintiff's administrative discrimination charge and her instant failure to

accommodate claims rely on the same statutes and on similar theories.  *See Leong*, 347 F.3d at

1122.  These claims share the same first two elements: (1) whether plaintiff is disabled within

the meaning of the ADA/FEHA, and (2) whether she is a qualified individual able to perform the

essential functions of the job with or without reasonable accommodation.  *Allen v. Pacific Bell*,

348 F.3d 1113, 1114 (9th Cir. 2003); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.

1996); *see* Dckt. No. 18-1 at 16, 21; *see also* Ex. A.  If reasonable accommodation is provided, it

must be described to sustain an ADA discrimination claim.  *Kennedy*, 90 F.3d at 1481.

////

22

1    Furthermore, in her administrative complaint plaintiff charged discriminative termination

2    due to her hereditary spastic paraparesis.  This allegation would reasonably trigger investigation

3    into the reasons for her termination.  Plaintiff's reasons included her supervisor's alleged verbal

4    harassment concerning her disability, as well as her supervisor's comments regarding her need

5    for both a wheelchair and a doctor's note justifying her taking long restroom breaks due to her

6    condition.  Ex. A.

7    Construing plaintiff's administrative charges liberally, investigation of plaintiff's

8    allegations of her employer's failure to accommodate her disability could reasonably be expected

9    to have grown from these charges.  *Rodriguez*, 265 F.3d at 897.  Accordingly, plaintiff did not

10   fail to exhaust her administrative remedies for her failure to accommodate claims; these claims

11   are not barred on this basis.

12                         b.  Claims Under FEHA and ADA

13   TPMG further moves for summary judgment of plaintiff's failure to accommodate claims

14   on the basis that plaintiff cannot establish a *prima facie* case of a failure to accommodate under

15   either FEHA or the ADA.  Dckt. No. 18-1 at 21-23.

16   "The essential elements of a failure to accommodate claim under FEHA [and the ADA]

17   are: (1) the plaintiff has a disability covered by [FEHA or the ADA]; (2) the plaintiff is a

18   qualified individual (i.e., he or she can perform the essential functions of the position); and (3)

19   the employer failed to reasonably accommodate the plaintiff's [known] disability."  *Cuiellette v.*

20   *City of Los Angeles*, 194 Cal. App. 4th 757, 766 (2011) (citation and internal quotation marks

21   omitted); *see also Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003).  The duty to

22   accommodate arises once the employer knows of a qualified employee's disability.  *Prilliman v.*

23   *United Air Lines, Inc*., 53 Cal. App. 4th 935, 950-51 (1997); *see also Raine v. City of Burbank*,

24   135 Cal. App. 4th 1215, 1222 (2006) (explaining that once an employee gives the employer

25   notice of his disability, "[t]his notice then triggers the employer's burden to take positive steps to

26   accommodate the employee's limitations") (citation and internal quotation marks omitted).

Under FEHA, an employer "knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation." *Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 887 (2007) (internal quotation marks omitted).  A "reasonable accommodation" involves "job restructuring, part-time or modified work schedules . . . and other similar accommodations for individuals with disabilities."  Cal. Gov't Code § 12926(n)(2); Cal. Code Regs. tit. 2 § 7293.9(a) (2).  A temporary leave of absence is considered a reasonable accommodation under the FEHA.  *See Hanson v. Lucky Stores, Inc*., 74 Cal. App. 4th 215, 225, (1999) (stating that finite leave can constitute a reasonable accommodation if it is likely the employee will eventually return to work).

The first two elements of a prima facie claim for failure to accommodate are identical to two factors in the prima facie claim for disability discrimination.  As discussed above, the court has already found that plaintiff fails to meet the second element since she has not shown that she could perform the essential duties of her job with or without reasonable accommodations.  As explained above, there is no genuine dispute regarding whether an Advice Nurse must have regular and reliable attendance because under-staffing at the Call Center compromises patient care, and plaintiff has not provided evidence demonstrating that she could meet those functions of the Advice Nurse position even with reasonable accommodations.  Therefore, plaintiff cannot establish even a *prima facie* case of a failure to accommodate under either FEHA or the ADA.

Moreover, plaintiff has also not demonstrated that TPMG failed to reasonably accommodate plaintiff's disability.  Plaintiff does not dispute that TPMG provided plaintiff with leaves of absence; granted plaintiff's request to reduce her scheduled shifts from eight hours to four hours between September and November 2007; granted plaintiff's request for an accommodation in late 2007, providing plaintiff up to three days off work per month; awarded plaintiff an on-call position beginning March 30, 2008 as an accommodation; and granted plaintiff's December 2008 request to transfer from an on-call position to a 32-hour per week

1  position, and continued to provide plaintiff up to three days off work per month as an

2  accommodation, even without supporting medical documentation.  Pl.'s Resp. to Def.'s SUF,

3  Dckt. No. 24, SUF 18, 19, 21-23, 25.  It is also undisputed that in April 2009, TPMG granted

4  plaintiff a change in manager after she submitted a doctor's note dated April 16, 2009.  Plaintiff

5  also does not dispute that between June and August 2009, plaintiff worked only 10 of 52 shifts,

6  and although she was asked to provide further documentation from her doctors, she failed to do

7  so.[23]  Pl.'s Resp. to Def.'s SUF 28-29.

8       Plaintiff has not clearly indicated what reasonable accommodation TPMG failed to

9  provide to her.  However, based on the evidence presented, it appears that "'the only imaginable

10  accommodation' that would satisfy [plaintiff] 'would be an open-ended schedule that would

11  allow [her] to come and go as [s]he pleased.'"  *Samper v. Providence St. Vincent Med. Ctr.*, 675

12  F.3d 1233, 1239 (2012).  Given the nature of plaintiff's position as an Advice Nurse, such an

13  accommodation is unreasonable.  *Id.* at 1240 (noting that if the defendant hospital provided the

14  plaintiff the accommodation that she was essentially requesting [to be exempted from an

15  essential function of the job – attendance], such an accommodation "would eviscerate any

16  attendance policy, leaving the hospital with the potential for unlimited absences"); *Waggoner v.*

17  *Olin Corp.*, 169 F.3d 481, 485 (7th Cir. 1999) (holding "as a matter of law" that employee's

18  desire "to miss work whenever she felt she needed to and apparently for so long as she felt she

19  needed to" was not a reasonable accommodation for someone employed as a production worker).

20       Accordingly, because plaintiff has not demonstrated that she could perform the essential

21  duties of her job with or without reasonable accommodations or that TPMG failed to reasonably

22  accommodate her disability, TPMG is entitled to summary judgment on this claim.

23  ////

24  ////

25

26       [23] As noted above, lthough plaintiff disputes this latter fact, she offers no evidence countering
TPMG's evidence or demonstrating that this did not in fact occur from June 2009 to August 2009.

5. <u>Termination in Violation of Public Policy (Claim 1)</u>

TPMG also moves for summary judgment on plaintiff's wrongful termination claim, arguing that the claim is derivative of plaintiff's disability discrimination claim and therefore fails to the same reasons that claim fails. Dckt. No. 18-1 at 18. Specifically, TPMG contends that plaintiff was terminated because she was unable to perform the essential function of attending work regularly and reliably. *Id.* TPMG also notes that plaintiff was not disciplined or demoted at any time between January 2008 and her termination in September of 2009. *Id.*

Tort claims for wrongful termination in violation of public policy permit discharged at-will employees to bring suit when they are terminated "for a reason contrary to the law or fundamental public policy." *Olinick v. BMG Entm't*, 138 Cal. App. 4th 1286, 1300 n.10 (2006) (citation omitted); *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 666 (1988). California Government Code § 12940(a) provides that it is unlawful for an for an employer to discriminate against an employee because of a physical or mental disability. Such FEHA "provisions prohibiting discrimination may provide the policy basis for a claim for wrongful discharge in violation of public policy." *Phillips v. St. Mary Reg'l Med. Ctr.*, 96 Cal. App. 4th 218, 227 (2002); *see also Estes v. Monroe*, 120 Cal. App. 4th 1347, 1355 (2004) (indicating plaintiff may bring claim for wrongful discharge in violation of "the public policy embodied in the FEHA" where defendant failed to offer reasonable accommodations for his disability). To sustain a wrongful termination claim in violation of public policy, plaintiff must establish that the dismissal violated a policy that is: (1) fundamental; (2) beneficial for the public; and (3) embodied in a statute or constitutional provision. *Wynes v. Kaiser Permanente Hosps.*, 2011 WL 1302916, at *9 (E.D. Cal. Mar. 31, 2011) (citing *Colores v. Bd. of Trustees*, 105 Cal. App. 4th 1293, 1307 (2003)).

Here, plaintiff's theory supporting her wrongful termination claim is essentially identical to her theory supporting her claims for disability discrimination — that defendant terminated her because of her physical disability and defendant's unwillingness to accommodate that disability.

26

1   However, as discussed above, TPMG is entitled to summary judgment on each of those claims.

2   Plaintiff has not demonstrated that her dismissal violated public policy in any other manner.  *See*

3   *Nielsen v. Trofholz Technologies, Inc*., 750 F. Supp. 2d 1157 (E.D. Cal. 2010) ("'In order to

4   sustain a claim of wrongful discharge in violation of fundamental public policy, [a plaintiff] must

5   prove that his dismissal violated a policy that is (1) fundamental, (2) beneficial for the public,

6   and (3) embodied in a statute or constitutional provision.'  Plaintiff's claim for wrongful

7   termination in violation of public policy is derivative of his statutory claims.  As summary

8   judgment has been granted on plaintiff's other claims, summary judgment is similarly granted on

9   the public policy claim.  Accordingly, plaintiff's claim of wrongful termination in violation of

10  public policy fails as a matter of law and the court will grant TTI's motion for summary

11  judgment on that claim.") (citing *Turner v. Anheuser–Busch, Inc.*, 7 Cal. 4th 1238, 1256 (1994);

12  *Sanders v. Arneson Prods., Inc*., 91 F.3d 1351, 1354 (9th Cir. 1996); *Cavanaugh v. Unisource*

13  *Worldwide, Inc*., 2007 WL 915223, at *11 (E.D. Cal. Mar. 26, 2007) (internal citations

14  omitted)).  Therefore, TPMG is also entitled to summary judgment on plaintiff's claim for

15  termination in violation of public policy.

16              6.  Intentional Infliction of Emotional Distress (Claim 8)

17          Finally, TPMG moves for summary judgment on plaintiff's claim for intentional

18  infliction of emotional distress.  TPMG contends that the alleged conduct underlying plaintiff's

19  claim, that Ms. Dear tapped on plaintiff's desk to get her attention and asked plaintiff whether

20  she would benefit from a wheelchair, does not rise to the requisite level of "extreme and

21  outrageous."  Dckt. No. 18-1 at 23-24.

22          Under California law, the elements of the tort of intentional infliction of emotional

23  distress are: (1) extreme and outrageous conduct by the defendant with the intent of causing, or

24  reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffering

25  severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

26  distress by the defendant's outrageous conduct.  *Christensen v. Superior Court*, 54 Cal. 3d 868

1    (1991).  The first of these elements, "extreme and outrageous conduct," requires conduct that

2    goes "beyond all possible bounds of decency", and would be regarded as "atrocious, and utterly

3    intolerable in a civilized community."  *Alcorn v. Anbro Eng., Inc.*, 2 Cal. 3d 493, 499 (1970).

4    "Generally, conduct will be found to be actionable where the 'recitation of the facts to an

5    average member of the community would arouse his resentment against the actor, and lead him

6    to exclaim, 'Outrageous!'"  *McMahon v. Craig*, 176 Cal. App. 4th 222, 235 (2009).  Outrageous

7    conduct does not include trivialities such as indignities, annoyances, hurt feelings, or bad

8    manners that a reasonable person is expected to endure.  *Alcorn*, 2 Cal. 3d at 499.  Similarly,

9    discipline and criticism that are a normal part of the employment relationship do not constitute

10   "outrageous" conduct, even if it is intentional and malicious.  *See Shoemaker v. Myers*, 2 Cal.3d

11   1, 25 (1990).

12        Plaintiff's allegations that Ms. Dear tapped/pounded on plaintiff's table and computer

13   monitor to get plaintiff's attention, required a doctor's note justifying long restroom breaks, and

14   made the statement in 2009 regarding the need for a wheelchair fail to meed the standard

15   applicable here.[24]  None of that conduct, even taken in the light argued by plaintiff, is so

16   "extreme and outrageous" that it goes "beyond all possible bounds of decency" and would be

17   regarded as "atrocious, and utterly intolerable in a civilized community."  *Alcorn*, 2 Cal. 3d 493,

18   499; *see also Huck v. Kone Inc.*, 2011 WL 6294466, at *13 (N.D. Cal. Dec. 15, 2011) (an

19   employer's work-related criticism was not extreme conduct); *Janken v. GM Hughes Elecs.*, 46

20   Cal. App. 4th 55, 80 (1996) ("A simple pleading of personnel management activity is insufficient

21   to support a claim of intentional infliction of emotional distress, even if improper motivation is

22   alleged.").  Therefore, TPMG is entitled to summary judgment on plaintiff's claim for intentional

23

24   [24] As noted above, plaintiff also alleges in her complaint that Ms. Dear refused to tell plaintiff
     about the times mandatory meetings were scheduled to start, obsessively monitored plaintiff's
     personal time, walked away from plaintiff, and refused to answer plaintiff's questions about changes
25   in work place policy.  However, those allegations are not supported by admissible evidence.  Even
     if they were, they would not create a genuine issue of material fact as to this claim as the alleged
26   actions are not so extreme and outrageous that they go "beyond all possible bounds of decency."

1  infliction of emotional distress.

2  IV.   <u>CONCLUSION</u>

3      In accordance with the foregoing, IT IS HEREBY RECOMMENDED that:

4      1.  TPMG's motion for summary judgment, Dckt. No. 18, be granted; and

5      2.  The Clerk be directed to enter judgment for TPMG and close this case.

6      These findings and recommendations are submitted to the United States District Judge

7  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen

8  days after being served with these findings and recommendations, any party may file written

9  objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11  shall be served and filed within fourteen days after service of the objections.  The parties are

12  advised that failure to file objections within the specified time may waive the right to appeal the

13  District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*,

14  951 F.2d 1153, 1157 (9th Cir. 1991).

15  DATED:  March 22, 2013

16

17                              EDMUND F. BRENNAN
                                UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

29